IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

BRENDA K. STAPLETON,                )
                                    )
              Plaintiff,            )
                                    )
                                    )      CIV-10-324-D
v.                                  )
                                    )
MICHAEL J. ASTRUE,                  )
  Commissioner of Social Security   )
  Administration,                   )
                                    )
              Defendant.            )


REPORT AND RECOMMENDATION

Plaintiff seeks judicial review pursuant to 42 U.S.C. § 405(g) of the final decision of

Defendant Commissioner denying her application for supplemental security income benefits

under Title XVI of the Social Security Act, 42 U.S.C. §§ 416(i), 1382. Defendant has

answered the Complaint and filed the administrative record (hereinafter TR___), and the

parties have briefed the issues. The matter has been referred to the undersigned Magistrate

Judge for initial proceedings consistent with 28 U.S.C. § 636(b)(1)(B). For the following

reasons, it is recommended that the Commissioner's decision be affirmed.

I. Background

Plaintiff filed her application for benefits on November 6, 2007, and alleged that she

was disabled beginning November 6, 2005. (TR 94-96). At the time she filed her application, Plaintiff was 50 years old and had a GED education. (TR 120). According to the agency's records, Plaintiff had minimal earnings prior to the date of her application and no reported earnings from 1991 through 2008. (TR 106, 109-110). Plaintiff reported that she lived with her adult son in a friend's house. (TR 95). Plaintiff alleged that she was disabled due to seizures, a hernia, emphysema, bronchitis, asthma, chronic obstructive pulmonary disease ("COPD"), a kidney stent, a "bleeding" ulcer, and two periods of incarceration.[1] (TR 115). She later stated that she had additional impairments due to high blood pressure and depression. (TR 166, 169). The application was denied at the initial and reconsideration stages of administrative decisionmaking. (TR 50, 53).

At Plaintiff's request, a hearing *de novo* was conducted before Administrative Law Judge Wampler on June 22, 2009. (TR 22-48). At this hearing, Plaintiff and a medical expert, Dr. Thomas N. Lynn, testified. Subsequently, the ALJ issued a decision on October 19, 2009, in which the ALJ found that Plaintiff's substance abuse was a contributing factor material to the determination of disability and she was not disabled within the meaning of the Social Security Act from the date of the application through the date of the decision. (TR 10-21). The Appeals Council declined Plaintiff's request for review of this decision. (TR 7-9). Plaintiff now seeks judicial review of the final decision of the Commissioner embodied in

---

[1] Public records of the Oklahoma Department of Corrections show that Plaintiff, who is identified in DOC records as Brenda K. Dewberry, was incarcerated most recently in 2002 and 2003 for convictions of possession of controlled dangerous substance and possession of controlled dangerous substance with intent to distribute. http://doc.state.ok.us (Offender Lookup).

the ALJ's determination.

II. Standard of Review

Judicial review of this action is limited to determining whether the Commissioner's decision is based upon substantial evidence and whether the correct legal standards were applied. Emory v. Sullivan, 936 F.2d 1092, 1093 (10th Cir. 1991). "Evidence is not substantial if it is overwhelmed by other evidence in the record or constitutes mere conclusion." Musgrave v. Sullivan, 966 F.2d 1371, 1374 (10th Cir. 1992). Because "all the ALJ's required findings must be supported by substantial evidence," Haddock v. Apfel, 196 F.3d 1084, 1088 (10th Cir. 1999), the ALJ must "discuss[ ] the evidence supporting [the] decision" and must also "discuss the uncontroverted evidence [the ALJ] chooses not to rely upon, as well as significantly probative evidence [the ALJ] rejects." Clifton v. Chater, 79 F.3d 1007, 1010 (10th Cir. 1996). The court may not reweigh the evidence or substitute its judgment for that of the Commissioner. Hamilton v. Secretary of Health & Human Servs., 961 F.2d 1495, 1498 (10th Cir. 1992). However, the court must "meticulously examine the record" in order to determine whether the evidence in support of the Commissioner's decision is substantial, "taking into account whatever in the record fairly detracts from its weight." Hamlin v. Barnhart, 365 F.3d 1208, 1214 (10th Cir. 2004)(internal quotation omitted).

The Social Security Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a

continuous period of not less than 12 months." 42 U.S.C. §§ 416(i), 1382c(a)(3)(A). The Commissioner applies a five-step inquiry to determine whether a claimant is disabled. See 20 C.F.R. § 416.920(b)-(f) (2010); see also Grogan v. Barnhart, 399 F.3d 1257, 1261 (10th Cir. 2005)(describing five steps in detail). At the fifth and final step in the sequential evaluation procedure, "the burden of proof shifts to the Commissioner . . . to show that the claimant retains sufficient residual functional capacity (RFC) to perform work in the national economy, given [the claimant's] age, education, and work experience." Grogan, 399 F.3d at 1261; accord, Channel v. Heckler, 747 F.2d 577, 579 (10th Cir. 1984).

When there is evidence of substance abuse, as there is in the Plaintiff's administrative record, the ALJ must employ an additional step in the evaluation of such a claim. Under the Social Security Act, "[a]n individual shall not be considered to be disabled .... if alcoholism or drug addiction would (but for this subparagraph) be a contributing factor material to the Commissioner's determination that the individual is disabled." 42 U.S.C. §§ 423(d)(2)(C), 1382c(a)(3)(J). When an ALJ determines that a claimant is disabled but there is medical evidence in the record of drug addiction or alcoholism, the ALJ must determine whether that substance abuse is a "contributing factor material to the determination of disability." 20 C.F.R. § 416.935(a). When determining whether drug or alcohol abuse is material to a finding of disability, an ALJ must determine whether the claimant would still be found disabled if the claimant stopped using drugs and/or alcohol. 20 C.F.R. § 416.935(b)(1). Thus, the ALJ must evaluate the claimant's physical and/or mental impairments, determine which of these impairments would remain if the claimant stopped using drugs and/or alcohol,

4

and then determine whether any or all of the remaining impairments would be disabling. 20 C.F.R. § 416.935(b)(2). If the ALJ finds that a claimant's remaining impairments would not be disabling, then the ALJ must find that the claimant's drug and/or alcohol abuse "is a contributing factor material to the determination of disability" and find the claimant is not disabled. 20 C.F.R. § 416.935(b)(2)(i). In contrast, drug addiction or alcoholism is not a "contributing factor material to the determination of disability" if the claimant's impairments would still be disabling even if the person stopped using drugs or alcohol. 20 C.F.R. §416.935(b)(2)(ii).

III. Medical Record

Plaintiff's medical records consist mainly of the reports of examining physicians at hospital emergency rooms ("ER"). There are no medical records of treatment of Plaintiff prior to December 2006. On two occasions in December 2006, Plaintiff was treated at a hospital emergency room for acute bronchitis and atypical, noncardiac chest pain. (TR 260-262, 263-265). The examining physician noted a chest x-ray, computerized tomographic ("CT") scan of Plaintiff's chest, and an electrocardiogram ("EKG") were normal. Antibiotic, cough, and inhaler medications were prescribed, and Plaintiff was advised to stop smoking. (TR 260-261, 265).

In February 2007, Plaintiff sought ER treatment after she reportedly fell and twisted her left ankle. An x-ray of her ankle was normal, and a physical examination was normal except for left ankle tenderness. The diagnosis was left ankle sprain, and Plaintiff was discharged with pain medications. (TR 267-269). Later in February 2007, Plaintiff sought

ER treatment for minor injuries related to a fall. She stated she had fallen into a television after she had been drinking alcohol and lost her balance. A CT scan of Plaintiff's head was negative, and she was treated for superficial lacerations on her head and finger. (TR 271-273).

In March 2007, Plaintiff again sought ER treatment for minor injuries she related to a fall. Plaintiff stated she had fallen while walking and twisted her leg. Plaintiff also complained of shortness of breath for two weeks. Plaintiff reported she was a regular alcohol drinker and smoker. Plaintiff's medical history included kidney surgery and placement of a renal stint. A physical examination was normal except for a contusion and tenderness in her right leg and some scattered wheezes in her lungs. Plaintiff was treated for a leg contusion and acute bronchitis, and the examining physician advised her to stop smoking. (TR 275-277).

In April 2007, Plaintiff sought ER treatment for injuries she related to a fall. She complained that her right hand was painful and swollen. Plaintiff was treated for a right hand contusion. (TR 278). In May 2007, Plaintiff sought ER treatment for right hand pain after she reportedly fell the previous day. (TR 280). The examiner noted a physical examination was normal except for some minimal bruising on one finger, and x-rays revealed no fracture or dislocation. (TR 280-281).

In September 2007, Plaintiff sought ER treatment for a wrist laceration. Plaintiff reported she had been drinking alcohol and that she cut her wrist when the "bottle that she was carrying broke." (TR 283). Although Plaintiff claimed to have had a possible seizure,

ambulance personnel stated she had not shown any seizure-related symptoms when she was transported to the hospital. Plaintiff described a medical history of COPD and seizure disorder. She was treated with sutures for a small laceration on her left wrist. (TR 283-284).

One week later, Plaintiff sought ER treatment for possible infection in her stitches. The examiner noted the left wrist laceration was healing, and antibiotic medication was prescribed for early signs of infection. (TR 286-287). In another ER visit in September 2007, Plaintiff was described by the examining physician as an "alcoholic" who sought treatment after a fall two weeks earlier. Plaintiff complained of rib pain and facial bruising. A CT scan of Plaintiff's head was negative, but x-rays revealed a nasal fracture. Plaintiff was treated for facial and rib contusions. (TR 289-290).

In November 2007, Plaintiff again sought ER treatment for injuries she related to another fall. She gave a medical history of asthma and COPD. The examiner noted Plaintiff appeared well, awake, and alert, and she was treated for a left knee sprain with a knee immobilizer and crutches. (TR 292-293). In another ER visit in November 2007, Plaintiff complained of shortness of breath, cough, and wheezing. The examining physician noted a diagnosis of COPD exacerbation and atypical chest pain, for which anti-inflammatory and inhaler medications were prescribed. Plaintiff stated she did not have a treating physician, and she was advised to stop smoking. (TR 295-296).

On December 25, 2007, Plaintiff sought ER treatment for injuries she related to a fall. Plaintiff stated she had "passed out" and rolled off her couch, and she admitted "drinking a great deal" that evening. (TR 298). She denied seizure symptoms but stated she had a history

of "seizures." (TR 298). Plaintiff denied a history of asthma, cough, or shortness of breath. (TR 299). Following a physical examination, which was normal, and x-rays and EKG, which were negative, the examining physician noted a diagnosis of alcohol intoxication and left arm cellulitis (infection). The examiner noted a drug screen was positive for marijuana and a very high blood alcohol level. Plaintiff was prescribed antibiotic medication and advised to stop drinking, smoking, and abusing drugs. (TR 299-303).

In February 2008, Plaintiff again sought ER treatment for injuries she related to a fall. Plaintiff was given a special shoe and prescribed a short supply of pain medication for treatment of a fractured right big toe. (TR 305-306, duplicate at 317-318). In April 2008, Plaintiff sought ER treatment after she reportedly fell and hurt her left knee. The examiner noted Plaintiff exhibited full ambulation, and she denied dizziness. She was treated for a left knee contusion with an Ace wrap and a short supply of pain medication. (TR 307-308, duplicate at 320-321).

Plaintiff underwent a consultative pulmonary function study in April 2008. (TR 325). A consultative physician interpreted the study as normal. (TR 393).

In March 2008, Plaintiff sought mental health treatment at HOPE Community Services, Inc. ("HOPE") for anxiety and depression. (TR 341). Plaintiff reported she had been in rehabilitation twice for substance abuse and that she had a history of crack cocaine dependence ending about two years previously. Plaintiff also reported that she had been depressed off and on for several years, that she had previously taken anti-depressant medication but had voluntarily stopped the medication, that she had attempted suicide

"many" times, and that she had a history of "panic attacks." (TR 347, 348, 364). Plaintiff denied current drug or alcohol use. (TR 341, 347, 364). Plaintiff reported her usual daily activities as cooking, cleaning, and laundry chores for herself and her adult son, playing with her dogs, watching television, playing video games with her adult son, and having daily contact with her sister. (TR 346, 353, 358, 386).

A physician's assistant evaluated Plaintiff at HOPE in April 2008. (TR 364-365). The evaluator conducted a mental status examination and noted that Plaintiff was pleasant, cooperative, exhibited a slightly anxious affect and dysthymic (mildly depressed) mood, fair attention and concentration, good fund of knowledge, intact abstract reasoning, fair insight and judgment, goal directed speech, and that she denied hallucinations, delusions, suicidal thoughts, or homicidal ideations. (TR 364). The evaluator diagnosed Plaintiff with recurrent, moderate major depression without suicidal or psychotic features, and panic disorder. The evaluator prescribed anti-depressant and anti-anxiety medications for Plaintiff, and Plaintiff was advised to return in four months. (TR 365). Another clinician at HOPE noted that Plaintiff agreed to undergo counseling once a month. (TR 337, duplicate at 370). However, there are no notes of further treatment of Plaintiff at HOPE.

In May 2008, Plaintiff arrived at an ER by ambulance after she reportedly fell while getting out of bed that evening and hit her head. (TR 309). Plaintiff admitted she had been drinking alcohol. The examining physician noted Plaintiff exhibited a normal gait and normal examination and that a CT scan of Plaintiff's head was negative. Plaintiff denied chest pain, loss of consciousness, or shortness of breath. (TR 309-311). Plaintiff gave a

medical history of seizure disorder, COPD, asthma, kidney stones, hypertension, and depression. (TR 309). Plaintiff again sought ER treatment in May 2008 and complained she had smashed a finger in a door. Plaintiff was prescribed antibiotic medication for an infection. (TR 312-313).

On November 6, 2008, Plaintiff sought ER treatment for right arm pain. She stated that she had fallen three days before and was "unsure if she had a seizure," but she admitted she did not know what caused her to fall. (TR 532). She gave a history of "seizures, the last one 3 years ago." (TR 532). X-rays revealed a fracture of the humerus in her right arm. On November 11, 2008, Plaintiff underwent surgery to repair the fracture, and the surgeon, Dr. White, reported that an internal plate was successfully placed in Plaintiff's right arm during the operation. (TR 524-525).

On November 22, 2008, Plaintiff was admitted to a hospital for three days. She complained of low back pain for five days and increasing shortness of breath and cough for one day. (TR 513). Plaintiff reported she fell when she slipped on a wet floor and immediately had back pain that progressively worsened. (TR 518). Plaintiff admitted she continued to smoke. (TR 518). On examination, the physician noted Plaintiff exhibited normal strength in her lower extremities and no loss of sensation or edema. (TR 519). The examining physician diagnosed Plaintiff with COPD exacerbation, muscular strain, and urinary tract infection, all of which improved with medications and breathing treatments. (TR 513, 520). Plaintiff was also begun on medication to treat high blood sugar levels, and her elemental diabetes improved. (TR 514). Plaintiff was discharged after three days in stable

condition on multiple medications. (TR 514).

In December 2008, Plaintiff sought ER treatment for upper back pain. (TR 511). No objective findings were noted upon examination other than tenderness in the upper thoracic region, and medication was prescribed for her back pain. (TR 512). In February 2009, Plaintiff sought ER treatment for a right shoulder injury she related to a fall the previous evening. (TR 504). The examining physician noted a past history of COPD, pleurisy, and alcohol abuse. (TR 504). A physical examination was normal except for decreased range of shoulder motion. (TR 504-505). Laboratory testing and x-rays were negative. Plaintiff was treated with antibiotic medication and a short supply of pain medication for chest and right shoulder contusions and a urinary tract infection. (TR 507).

On June 10, 2009, Plaintiff sought ER treatment for several days chest pain and shortness of breath. (TR 490). The examiner noted normal findings in a physical examination and unremarkable laboratory work-up. (TR 491-492). Although Plaintiff's blood alcohol level was very high, Plaintiff admitted drinking only one beer and consuming a liquid over-the-counter cold medication. (TR 492). Plaintiff was prescribed antibiotic medication for atypical chest pain and pleurisy. (TR 493). On May 3, 2009, Plaintiff sought ER treatment for dizziness occurring for five days, and a cough, wheezing, mild vomiting, fever, and chest tightness. (TR 498). Plaintiff was prescribed antibiotic, anti-inflammatory, and inhaler medications for acute bronchitis and probable chest wall pain. (TR 500). Plaintiff was advised to "ween" herself to stop alcohol use and to stop smoking. (TR 500).

In July 2009, Plaintiff sought ER treatment for abdominal and chest pain. (TR 591).

The examining physician noted that a physical examination was normal except for some abdominal tenderness. (TR 592). Plaintiff reported she drank a fifth of whiskey every other day "for as long as she can remember" but stated she "had quit at some point this year." (TR 588). Plaintiff was hospitalized for nine days for an acute urinary tract infection. (TR 594, 575-576). Plaintiff underwent an abdominal ultrasound on July 23, 2009, as a result of elevated liver function testing and her "extensive [alcohol] history." (TR 605). According to the consulting urologist, Dr. Wong, her liver and renal ultrasound testing was within normal limits. (TR 576). According to the hospital treating physician, Plaintiff's pulmonary function tests revealed the presence of mild COPD. (TR 576, 618-619). An echocardiogram revealed hypertension with a normal ejection fraction, and an electrocardiogram was unremarkable. (TR 576). The infection resolved, and Plaintiff was discharged.

IV. <u>Alcohol or Substance Abuse as Factor Material to Disability</u>

Plaintiff contends there is not sufficient evidence to support the ALJ's finding that her alcohol abuse is a factor material to her disability. Plaintiff further contends that the ALJ did not follow the proper standard in making this determination. In his decision, the ALJ found that Plaintiff had severe impairments due to "status post open reduction internal fixation spiral fracture right humerus, 2008; non-insulin dependent diabetes mellitus, 2008; [COPD]; mild degenerative changes lumbar spine; depression and alcohol abuse." (TR 12). After reviewing the relevant portions of the medical record, the ALJ concluded that Plaintiff's impairments, when considered with her substance abuse disorder, were disabling because she "would have an unacceptable number of absences from the workplace and would have

decreased concentration, persistence and pace" and would therefore not be able to sustain employment. (TR 16).

The ALJ's decision reflects that the ALJ followed the regulatory procedure for determining whether Plaintiff's substance abuse was a "contributing factor material to the determination of disability." The ALJ found that, if Plaintiff stopped her alcohol abuse, Plaintiff's remaining impairments would not be disabling because she had the remaining functional capacity ("RFC") to perform light work so long as she avoided concentrated exposure to pulmonary irritants and hazards. (TR 18-19). The ALJ applied the Medical-Vocational Guidelines, or "grids," in determining that Plaintiff was not disabled within the meaning of the Social Security Act, considering her age, education, and RFC for work.

Specifically, the ALJ found that, if she stopped her alcohol abuse, Plaintiff would not have a severe mental impairment due to depression. Plaintiff challenges this finding. Plaintiff points to the diagnostic assessment contained in the report of a physician's assistant at HOPE who evaluated Plaintiff in April 2008. (TR 364-365). In this assessment, the physician's assistant found that Plaintiff had a moderate level major depression without suicidal or psychotic features and panic disorder without agoraphobia. (TR 365). Plaintiff also points to a separate diagnostic assessment made at HOPE by another clinician in March 2008. This clinician stated that Plaintiff had bipolar I disorder with psychotic features. (TR 368). A diagnosis alone, however, is not sufficient to establish a severe impairment. See Hinkle v. Apfel, 132 F.3d 1349, 1352 (10th Cir. 1997)(claimant must show more than mere presence of condition or ailment to satisfy step two's requirement of a severe impairment).

13

The ALJ recognized in his decision that Plaintiff had briefly sought treatment at HOPE for depression. Thus, no error occurred in the ALJ's failure to find that the diagnostic assessments made by a physician's assistant and clinician at HOPE established the existence of a severe mental impairment due to depression.

Plaintiff next contends that the Commissioner's decision must be reversed because the ALJ ignored relevant evidence of the severity of her depression. Plaintiff points to the global assessment of functioning ("GAF") scores[2] contained in two diagnostic assessments of Plaintiff made at HOPE. It is well established that an "ALJ is not required to discuss every piece of evidence" in the record. Wall v. Astrue, 561 F.3d 1048, 1067 (10th Cir. 2009). In this case, the ALJ did not err in failing to specifically address the GAF scores contained in the diagnostic assessments of the physician's assistant and clinician at HOPE. The physician's assistant evaluated Plaintiff on only one occasion in April 2008, and the report completed by the physician's assistant contained no explanation of how he or she determined Plaintiff was functioning with a "[c]urrent GAF" of 40. (TR 365). Nor did the physician's assistant describe any functional limitations related to the GAF score. The other clinician at HOPE who evaluated Plaintiff on one occasion in March 2008 also did not explain how he or she determined that Plaintiff was functioning with a "[c]urrent GAF" of 53 or describe

---

[2]"The GAF is a subjective determination based on a scale of 1 to 100 of 'the clinician's judgment of the individual's overall level of functioning.'" Pisciotta v. Astrue, 500 F.3d 1074, 1076 n. 1 (10th Cir. 2007)(quoting Am. Psychiatric Ass'n, Diagnostic & Statistical Manual of Mental Disorders (Text Revision 4th ed. 2000) at 32). A GAF score of 41 to 50 may indicate a serious impairment in social, occupational, or school functioning. Id. A GAF score of 51 to 60 indicates moderate symptoms, such as occasional panic attacks, or moderate difficulty in social, occupational, or school functioning. Id. at 34.

any work-related limitations. (TR 335).

As the ALJ pointed out in his decision, the record does not contain a diagnosis of a mental impairment from an "acceptable medical source." See 20 C.F.R. § 416.913(a), (d)(1). A physician's assistant and a mental health clinician are not considered to be "acceptable medical source(s)" capable of establishing the existence of a medically determinable impairment or providing a medical opinion. Social Security Ruling ("SSR") 06-03p, 2006 WL 2329939, at * 2 (Aug. 9, 2006); 20 C.F.R. § 416.927(a)(2); see Frantz v. Astrue, 509 F.3d 1299, 1301 (10th Cir. 2007)(discussing SSR 06-03p and related regulations). A medical source, including a physician's assistant, can, however, offer evidence to show the severity of a claimant's impairment and how it affects the claimant's ability to work. 20 C.F.R. §416.913(d). The ALJ considered the physician's assistant's diagnostic assessment and rejected the assessment for reasons explained in the ALJ's decision. (TR 18). The ALJ reasoned that Plaintiff did not continue mental health treatment at HOPE after the initial diagnostic assessment made by the physician's assistant, the physician's assistant's report of the diagnostic assessment of Plaintiff was made after one visit with Plaintiff, and there was no other medical evidence of a mental impairment from an acceptable medical source. The ALJ properly rejected the physician's assistant's diagnostic assessment, and no error occurred in connection with this determination. The ALJ also did not err in failing to address the clinician's one-page, conclusory diagnostic assessment of Plaintiff made at HOPE in March 2008 (TR 335) as it did not provide probative evidence of a disabling mental impairment.

In determining whether Plaintiff had a severe mental impairment due to depression, the ALJ properly considered the functional limitations set forth in the regulations that are relevant to this determination. See 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.04(B). The ALJ determined that, without considering Plaintiff's substance abuse, Plaintiff's depression had caused only mild limitations in her activities of daily living, social functioning, and ability to concentrate and had not caused episodes of decompensation. (TR 18-19). Moreover, as the ALJ pointed out in the decision, there is nothing in the record to show that Plaintiff continued with treatment at HOPE after the initial one or two visits. Consequently, the claimant's alleged impairment due to depression did not satisfy the 12-month duration requirement. Based on these findings, the ALJ determined that Plaintiff's depression did not constitute a severe impairment. The record shows Plaintiff did not persistently seek mental health treatment and hospital ER records reflect that she continued to excessively abuse alcohol during the relevant period of time after she alleged her disability began and after she briefly sought mental health treatment at HOPE in March and April, 2008. There is substantial evidence in the record to support the ALJ's step two determination that Plaintiff would not have a severe mental impairment due to depression if she stopped her substance abuse.

Plaintiff contends that the ALJ was required to obtain the testimony of a vocational expert before determining that Plaintiff's remaining impairments, not considering her substance abuse, were not disabling. Plaintiff is mistaken. The ALJ's RFC determination, as well as the ultimate determination of whether an individual is disabled under the Social

Security Act, are issues reserved to the Commissioner. SSR 96-5p, 1996 WL 374183, * 2 (July 2, 1996)("Titles II and XVI: Medical Source Opinions on Issues Reserved to the Commissioner"). In reaching the RFC determination, the ALJ properly considered the credibility of Plaintiff's subjective statements. Plaintiff testified at her hearing in June 2009 that she was unable to work because of COPD, the residual effects of her right arm fracture, kidney "problems," asthma, bronchitis, diabetes, and high blood pressure. (TR 27-28). Despite replete evidence to the contrary, Plaintiff testified that she had not consumed alcohol for six years. (TR 41).[3] The record contains several other inconsistencies in Plaintiff's testimony and inconsistencies between Plaintiff's statements and the medical record. The ALJ pointed to some of these inconsistencies in connection with his credibility determination. (TR 19-20). There is substantial evidence in the record to support this credibility determination.

The ALJ found that Plaintiff had the RFC to perform light work so long as she avoided concentrated exposure to pulmonary irritants and hazards. Plaintiff asserts that this RFC finding is not supported by substantial evidence in the record because the RFC finding does not include any limitations stemming from Plaintiff's depression. Plaintiff contends that the Tenth Circuit Court of Appeals' decision in <u>Salazar v. Barnhart</u>, 468 F.3d 615 (10th Cir. 2006), provides guidance. Plaintiff is again mistaken. In <u>Salazar</u>, the claimant had been diagnosed with borderline personality disorder in addition to substance abuse disorder by a

---

[3]For instance, during an interview with a disability examiner conducted in November 2007, the examiner noted that Plaintiff smelled of smoke and alcohol. (TR 113).

psychiatrist and a psychologist, and "several emergency room physicians and counselors" had recognized the claimant's borderline personality disorder. Id. at 621-622. The court found that the ALJ erred in failing to consider the claimant's borderline personality disorder in the disability determination and reversed the district court's decision. Id.

In Plaintiff's case, the ALJ considered Plaintiff's alleged impairment due to depression and, for reasons well supported by medical evidence in the record, found that Plaintiff did not have a severe impairment due to depression. There is no probative medical evidence or opinion by a treating or examining physician, psychiatrist, or psychologist in the record that Plaintiff's depression would significantly affect her ability to work if she stopped her substance abuse. Plaintiff does not point to any such evidence in the record.

The ALJ reviewed the medical evidence relevant to Plaintiff's impairments in making the RFC determination, including her right arm fracture (TR 12-13), her alleged back impairment (TR 13), her COPD (TR 13), her chest pain (TR 13), her alleged seizure disorder (TR 14-15), and other medical evidence of sprains, contusions, and lacerations (TR 15). The ALJ reasoned that the RFC finding "takes into full account the claimant's credible allegations regarding limitations from pain." (TR 20). The ALJ also considered the evidence in the record concerning Plaintiff's usual daily activities and the reports of consultative reviewing medical experts. (TR 20). The ALJ found that Plaintiff's reported activities were consistent with the RFC finding and that the opinions of the consultative reviewing medical experts that Plaintiff did not have a severe impairment were rejected. (TR 20). Although Plaintiff refers to evidence in the record that she sought ER treatment on several occasions for COPD

exacerbations, acute bronchitis, and atypical chest pain, Plaintiff does not provide citations to the record showing that these conditions were not successfully treated or that examining physicians had indicated Plaintiff had any work-related limitations caused by these conditions.

Plaintiff repeats her assertion that the diagnostic assessments made at HOPE in March and April 2008 indicated the existence of "moderate to severe mental limitations" adversely affecting Plaintiff's RFC for work. Plaintiff's Opening Brief, at 8. However, the ALJ did not err in failing to include additional mental work-related limitations in the RFC assessment. The one-time diagnostic assessments that appear in the record do not provide probative evidence of any work-related limitations caused by a mental impairment meeting the 12-month duration requirement. There is no probative medical evidence in the record that Plaintiff persistently sought treatment for a mental impairment, and no treating or examining physician, psychiatrist, or psychologist indicated Plaintiff had a mental impairment that significantly affected her ability to work.

Plaintiff suggests that the ALJ improperly relied on the grids in determining at step five that Plaintiff was not disabled within the meaning of the Social Security Act. At the fifth and final step of the requisite sequential evaluation process, the burden shifts to the Commissioner "to show that the claimant retains sufficient RFC . . . to perform work in the national economy, given her age, education and work experience." Lax v. Astrue, 489 F.3d 1080, 1084 (10th Cir. 2007)(internal quotation and citation omitted). The ALJ may rely on the grids to satisfy the step five burden of proof in certain circumstances. Heckler v.

<u>Campbell</u>, 461 U.S. 458, 467 (1983)(holding Secretary's reliance on grids is consistent with Social Security Act). The grids may be applied if a claimant's nonexertional limitations do not further limit the claimant's ability to perform work at the applicable exertional level. <u>Eggleston v. Bowen</u>, 851 F.2d 1244, 1247 (1988). Having properly found that Plaintiff was capable of performing work at the light exertional level in consideration of her remaining impairments, and not considering her substance abuse, the grids provided substantial evidence to support the Commissioner's decision that Plaintiff was not disabled within the meaning of the Social Security Act. Therefore, the Commissioner's decision should be affirmed.

<u>RECOMMENDATION</u>

In view of the foregoing findings, it is recommended that judgment enter AFFIRMING the decision of the Commissioner to deny Plaintiff's application for benefits. The parties are advised of their respective right to file an objection to this Report and Recommendation with the Clerk of this Court on or before _____March 7th_____, 2011, in accordance with 28 U.S.C. § 636 and Fed. R. Civ. P. 72. The failure to timely object to this Report and Recommendation would waive appellate review of the recommended ruling. <u>Moore v. United States</u>, 950 F.2d 656 (10th Cir. 1991); <u>cf.</u> <u>Marshall v. Chater</u>, 75 F.3d 1421, 1426 (10th Cir. 1996)("Issues raised for the first time in objections to the magistrate judge's recommendation are deemed waived.").

This Report and Recommendation disposes of all issues referred to the undersigned

Magistrate Judge in the captioned matter, and any pending motion not specifically addressed herein is denied.

ENTERED this _____14th_____ day of _____February_____, 2011.


GARY M. PURCELL
UNITED STATES MAGISTRATE JUDGE